Upson Regional Medical Center Upson Regional Medical Center Travis Faust v. Thank you. Thank you, Mr. Faust. You've saved two minutes. Ms. Patel. Thank you, Your Honors. And may it please the Court, Tara Patel for the EEOC. I want to go back to underscore the correct legal standard in this case. We ask this Court to correct a discreet legal error. The District Court added a step that doesn't exist to an established Equal Pay Act analysis. It shifted the burden back to the plaintiff to prove that defendant's affirmative defense was pretextual, thereby injecting a discriminatory intent requirement that this Court has repeatedly rejected. But you would agree with what I outlined for Mr. Faust, would you not, that if the employer puts forth evidence, substantial evidence, to support an affirmative defense, and depending on what the plaintiff has either already presented or presents about that affirmative defense, if then on the state of the record there's no genuine issue of material fact about the affirmative defense, the employer can get summary judgment in that scenario, right? Yes, Your Honor. We want to underscore again that the standard at the summary judgment stage is that, does the record show that the defendant established the defense so clearly that no rational jury could have found to the contrary? And if that's the case, then in that case the plaintiff would lose. And if that's the case, then it doesn't matter whether the Court articulated a third step because you wouldn't get to it. Do you agree with that? Your Honor, respectfully, I think in this case we don't know what the Court would have done in the first instance if it didn't have that third step in the back of its mind. Well, how about this? It's a summary judgment record that we reviewed de novo. It wouldn't matter what the Court thought. We could decide it ourselves. Yes, Your Honor. This Court could decide it yourselves. We would argue that it would be great for the opportunity for the district court to have the opportunity to apply the correct standards. It would be a waste of, it potentially would be a waste of time. Potentially, Your Honor. So what this Court and the Supreme Court have. . . I know you're a friend of the Court here, and I suspect you have some friendship with the plaintiff. So what is the material issue of fact that the jury should decide? Is it what Mr. Faust said, that these arguments about the distinction, the reasonable factor other than sex, go to base pay, not bonus pay? Yes, Your Honor, and Plaintiff's Counsel can correct me if I'm wrong, but the question here is has the plaintiff raised a genuine dispute of fact as to whether there's a problem with the base pay? The record shows that the plaintiff was hired first, had a lawyer that negotiated her bonus structure. Then a more senior doctor has come in. There was a negotiation about his bonus structure that obviously was more favorable than what she had had to start, and that after she had become aware of that, her lawyer came back in and renegotiated her bonus structure to be consistent with the more senior doctors, correct? Yes, that record does state that. All right, so what about that indicates that there was any . . . that the bonus structure given to him was not a reasonable factor other than sex? Well, again, I would defer this to Plaintiff's Counsel, this question of fact, but I believe that the problem with the bonus pay was that both doctors were generating for the hospital the same amount of money for their service or activity, but were receiving different amounts of pay even though they were doing the same thing and generating for the hospital that same amount of money. I want to make sure I've got something clear. The Commission really doesn't take a position on whether summary judgment ultimately should be granted to the defendant or not. Your concern is that our case law be made clear about how this framework works. Isn't that right? That's correct. Our chief concern is correcting this discrete legal error, and the Commission doesn't take an ultimate position on which way these facts bear out. So in conclusion, to make correct . . . with me, we don't have to go en banc to clarify how the standard works. If you look at case law of ours that maybe has some unfortunate language, but you actually consider what the holding was . . . That's right, Your Honor. . . . and the context, maybe trial as opposed to summary judgment, our case law can be reconciled and explained correctly, can it not? That's right, and I see my time is up. May I answer the question? You may. Thank you. Yes, under this Court's prior precedent rule, this Court has articulated the correct standard in a series of cases. Mitchell, one of the oldest controlling precedents on this point,  So this would be unnecessary to go en banc. This Court can correct this discrete legal error by referring to those presidential opinions. Any questions? No. Okay, thank you, Mr. Mitchell. Thank you, Your Honor. Mr. Luskin. May it please the Court, Your Honors, I'm Robert Luskin, and I have the pleasure of representing Upson Regional Medical Center in this matter. The lower court, as we've already addressed, has addressed granted summary judgment in favor of Upson on two issues that were presented related to the Equal Pay Act as well as the Title VII claim. Title VII claim, we would argue, was essentially abandoned in the underlying action. It was a timeliness issue. It was not addressed by the . . . and it wasn't addressed here, for Your Honors, as well. Upson Regional Medical Center, we would agree that the Equal Pay Act, the first to have to be a prima facie case, that wasn't anything that was really addressed in the lower court. It's not something we're addressing before this Court here today. We presented a legitimate and met the fourth standard, the fourth burden under the case law, as well as . . . Affirmative defense, right? We stated that. Certainly, it was presented earlier, that you're not just looking at a salary. You're also looking at this bonus structure. That's really what they're arguing about. You'd agree that this mention of pretext in the Equal Pay Act analysis is off the mark? I would agree that this Court, even as recently as 2020, in the . . . dealt with this issue in the Reddy case, and then in . . . which had been cited by Burnett in the Middle District of Georgia, where this case arose out of, and even had gone back to several other cases, that there is a split. Not every circuit does agree that pretext does not apply, but I would agree that at the end of the day, it is irrelevant and doesn't matter if the lower court, from the standpoint of pretext . . . Well, let's say it matters to us. Sure. It really doesn't have a place in the analysis for an Equal Pay Act claim, does it? It does not, based upon . . . we would contend that . . . we would agree that at this point, it would not. So we then get to a general summary judgment standard. Was there evidence presented? Is there a genuine issue of material fact about your affirmative defense? There is not. We would contend there is not the . . . That is the question, right? Yes, Your Honor. It is. That is the question you go back to at that point. What do you say to their position that all his experience, his safe deliveries, all had to do with what his initial pay rate was in terms of base salary? They abandoned that because they realized you had a reasonable factor other than sex to justify the base salary. But those factors can't be reasonable as it relates to calculation of bonuses because they're based upon the same revenue being paid to the hospital for each one of these components of work. So I would disagree with their assertion, and I can tell you why. And we actually stated this not only in our brief, but it was stated by our corporate representative, which is you have to look at experience. That's a relevant factor. The courts, the cases have all said that you can look at experience. Dr. Soumianis had 15 years of experience, was board certified, which is an important thing in the medical context, while Dr. Baker was not, had approximately two years of experience. Well, let's say we agree with you that it is appropriate to take experience into account for the tiered bonus system. But you also have to show that the factor of sex provided no basis for the wage differential and that none of the decision makers, whether in middle or upper management, were influenced by sex bias with respect to the actual dollar amounts. And here, your 30B6 opponent testified that she didn't know how the specific dollar amounts were reached. Why is there not a genuine issue of material fact there? So, Your Honor, I would say that if you actually look at the record and you actually look at the testimony, that excerpt that Your Honor just mentioned was actually cherry-picked specifically. And the district court actually took a great length of approximately two pages to actually outline the specific language. She does not say, as it was quoted in the brief, that I don't recall the specifics of the conversation. In their brief on page 12, they say, I don't recall the specifics of the conversation. I don't know exactly dot, dot, dot. I don't know how the number came up. You actually can look to the, on page 19 and page 20 of the district court. He actually, Judge Self, actually took the actual snapshot of the testimony, and it specifically says, when they were discussing the conversation from our corporate representative, I don't recall the specific words of the conversation. But it was, that's how we did it from the, that's how we established the rates of pay. That's what we looked at in order to hire the physician. And then it goes down further. What they have done is, what the plaintiff has done is they've taken two very lengthy sentences and combined them. We actually say, I don't, she actually says, I do not know exactly. I'm just a conversation, but I recall from many years ago, because this was five years later, I know that we talked about that. I don't know how that number came about, so she doesn't know the specifics of the number, but I know we talked about his years of experience, and he talked about his track record being so good. And he, she also went on to say earlier, in a non, earlier that the specific reason that the threshold, which is what we're talking about here, at the point at which she begins to bonus, is much lower. And the specific reason was she was less experienced. There was no track record. She'd only been practicing as a doctor for approximately two years, two and a half years at most. And it allowed her, as is quoted in her deposition and the testimony, and it's the only thing in the record, mind you, on page 47, that it gave her the ability to ramp up in her practice. Yeah, in essence, it was, this is basically a no D, good D goes unpunished scenario, because what they were doing was giving her an opportunity to ramp up her practice and earn that additional compensation actually at lower thresholds. That's correct, Your Honor. And I think it is important to note that this was an arm's length negotiated transaction. This was not a take it or leave it proposition that Upson came to Dr. Baker and said, here's your contract, sign it or go down the street to Columbus. She had not only an attorney representing her, she had someone that she has described, and it's in the record, as a contract specialist who deals exclusively with medical doctors. Okay, but you would agree with me that in her testimony she just says, based on a conversation we took into account experience when we established the rates of pay. Is there any detailed discussion of why the rate was this dollar amount for hers? Why the specific, the RVU rate was? Yes. No, there's no specific recognition as to what the dollar amounts were. The question there was the question of the threshold. When you started, when she actually started bonusing, the salaries were different as we discussed earlier. So the argument is she had a lower threshold for achieving a bonus, and so therefore the dollar amount may have been lower at the upper end. You think about it. And that differential, all of that, that entire tiered differential is related to experience. To give her the opportunity to ramp it up. Exactly. And it was negotiated, and if you look back, I know it's not this, the Eleventh Circuit hasn't dealt with this, but when we look at issues other than sex or a reason other than sex, one of those reasons can be a negotiated arm's-length transaction. And if you look, and if Your Honors, it's cited in our briefs, but the Fifth Circuit and the Sixth Circuit have both dealt with this issue and have held that, yes, you can look at arm's-length transactions. You can have difference of opinions. For example, in the Sixth Circuit, in the case that we cited in our brief and is mentioned, the Schleicher case, there was someone essentially bet on themselves. They said, I'd rather take in a negotiated transaction more on the bonus and less on the pay. And I'm going to work hard and I'm going to get that bonus. And then someone else was on a lower pay but took the salary and less of the bonus, and ultimately they made them equitable, and that's what brought the case about. And so the Sixth Circuit and the Fifth Circuit, in the Resnick case, which actually deals with a medical practice, dealt with this issue. And that is certainly, we believe, while not binding on this Court, would certainly be illustrative as to yet another reason why something other than sex was the basis for their decision to put Ms. Dr. Baker on a different bonus structure with a lower threshold. Finally, on the Title VII matter, we believe that was certainly waived. The timeliness issue, there is not a question there. That wasn't contested in point of appeal, the timeliness issue, right? We would get on that. That was certainly waived. Abandoned is the way I would look at it, forfeited. From the standpoint of whether we, as Upson, have met our burden, we do not believe there is a question of fact left for a jury to decide. We've stated our reason. That reason is unrebutted. The only rebuttal, and Judge Proctor, I think you've been asked the question earlier, is like what are you, or it may have been you, Judge Pryor, as well. Okay, assuming we do not have pretext. One thing's for sure. It was either Judge Proctor or a Judge Pryor. That is true, that is true. That even if we don't go to pretext, when we look at the other part, okay, the burden doesn't shift, but they may have to do something. They should have to say something, and there's nothing. The record is devoid of anything. However, we do have Dr. Baker's testimony, which we had cited to, that specifically says no one ever told me. I couch that in terms of an opportunity, not an obligation. I would agree. Material issue of fact in the record. It doesn't matter if a party raises it. If the court identifies it, it's a material issue of fact. I would agree that they do not, from that standpoint, they don't have to, but it would certainly be there still has to be an attack of some sort to show or some explanation to show why the stated reason and why there is a material fact. That is a best practice, isn't it? It's a best practice. It's something what the court wanted to see, and it's something that the court specifically outlined in their brief, in their order. And so for those reasons, Your Honors, we'd ask that the summary judgment, that the lower court's decision be affirmed. Thank you very much. Thank you, Mr. Pluskin. Mr. Faust, you've saved two minutes. Let me get you started. Yes, Your Honor. Did your client herself say she'd like, this is on the 2018 amendment, she'd like the RVU system, would not do quite as many RVUs as the comparator because of patient differences, and she would prefer to leave her bonus structure tiered? That statement is taken from an email, which no testimony was required from my client during her deposition. I will say, if you go through that email too, she says, okay, tiered would work, but I want something to level the playing field. So she clearly, when she learned of the disparity between the pay, she immediately began trying to address it. She lays out, okay, maybe tiered this way, but that's not what happened. What happened in this case, and what their designee testified to, is once she finally raised the issue, they gave her the same contract language as Dr. Somaitis, and the reason their designee said they get it was because it was fair. That's her testimony on page 101 of her deposition. It was fair for them to equalize the bonus structure between the two of them because they're doing the same job and they started at the same time. Now, as far as the cases, the arm's-length transaction has to be looked at on a case-by-case basis. Every female who accepts lower-paying wages accepts them. That has to be done. Here there was an attorney. We don't know what the transaction was with that attorney, but Ms. Baker testified that she didn't push back because she assumed on this component of her compensation she'd be treated equitably, and the minute she found out, she started raising it. So the concept that a young lawyer might want this to ramp up their practice doesn't hold water, and I want to briefly, very quickly discuss the issue about the lower threshold. Dr. Somaitis' contract was broken over two halves of the year. If both of the doctors had billed $4,500 or $4,400 WRVUs in the first half, Dr. Somaitis would have gotten $40 per RVU over $39,000 or $3,990, and my client would have gotten zero. Okay. We understand your argument, Mr. Faust, and we will be in recess until tomorrow. Thank you.